***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Griffin with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. An employment relationship existed between plaintiff-employee and defendant-employer, and this case is subject to the North Carolina Workers' Compensation Act.
4. The parties have agreed and stipulated to an average weekly wage of $470.09.
 ***********
The following documents were received into evidence as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement.
2. Stipulated Exhibit Number 2, Industrial Commission forms, Medical Records Bills, Plaintiff's Responses and Defendants' Responses to Discovery.
 ***********
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of Michael David Lauffenburger, M.D., taken on June 23, 2009 with Deposition Exhibit Number 1 attached to the deposition transcript.
2. Oral deposition of William Satterfield, M.D., taken on July 23, 2009.
 ***********
The following were submitted by the parties as:
 ISSUES *Page 3 
1. Whether plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on or about April 24, 2008?
2. If so, what benefits, if any, is she entitled to receive?
3. Whether plaintiff's claim for her fall on April 24, 2008 is barred due to late notice pursuant to N.C. Gen. Stat. § 97-22?
4. Whether defendants are entitled to a credit for unemployment benefits received by plaintiff?
5. Whether plaintiff's need for medical treatment for her left knee and any disability is related to a fall at Big Dog's on or about May 26, 2008 and not her fall on April 24, 2008?
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 41 years old. Plaintiff graduated from high school and took basic typing and real-estate math courses at community college.
2. On October 11, 2006, plaintiff was hired by defendant-employer as a waitress. Plaintiff was subsequently promoted to a manager position with defendant-employer's Kernersville restaurant. As a manager, plaintiff was responsible for satisfying customers, supervising employees and working alongside employees. Plaintiff's shift typically began at 10:00 a.m. and ended after closing at approximately 10:00 p.m. She was required to work on her feet most of her shift. *Page 4 
3. On April 24, 2008, at approximately 10:00 a.m., plaintiff walked into the dish pit in defendant-employer's restaurant with dishes in her hands. As she was walking out, plaintiff slipped on some wet floor mats. Plaintiff fell and injured her left knee, which became swollen and turned red immediately.
4. After the fall, plaintiff picked herself up and felt immediate pain in her knee. She walked into the waitress galley, and took a phone call from her district manager, Jimmy Gagne. Plaintiff reported to Mr. Gagne that she had fallen in the dish pit, and Mr. Gagne inquired as to whether plaintiff was "okay" and asked if she needed medical attention. Plaintiff indicated that she thought she was going to be alright, and continued to work her shift rather than seek medical attention. Plaintiff did not ask to complete an accident report.
5. On April 25, 2008, Mr. Gagne reviewed the surveillance tape of the restaurant and observed plaintiff's fall which occurred in the dish pit the previous day. Mr. Gagne informed Daryl Townsend, owner of the restaurant, of plaintiff's fall at work. Neither Mr. Gagne nor Mr. Townsend completed an accident report for plaintiff's fall despite receiving actual notice of the fall from plaintiff and observing the incident on the surveillance tape.
6. Plaintiff returned to work on April 25, 2008. Plaintiff contends that her knee was very sore and made "popping and cracking" noises, and that she had difficulty with her left knee including limping, having to sit down several times during her shifts, and pain and swelling in the knee. Plaintiff self-treated her knee by icing it and resting while she was at home.
7. In early May 2008, plaintiff requested to return to her position as a waitress to allow her to spend more time with her family. Plaintiff continued to work for defendant-employer until her scheduled vacation on or about May 21, 2008. *Page 5 
8. Plaintiff's general manager, Melissa Lassater, testified that she observed plaintiff sitting more frequently during her shifts and limping at work after the date of her fall.
9. Mr. Gagne, who testified that he would have been in the restaurant where plaintiff worked every other day during the period from April 24, 2008 through May 20, 2008, did not recall plaintiff limping or sitting down while at work. The Full Commission gives greater weight to the testimony of Mr. Gagne than to that of Ms. Lassater regarding plaintiff's condition at work following her fall.
10. On May 26, 2008, during plaintiff's scheduled time off from work, plaintiff attended a social function at Big Dog's, a local restaurant. Defendant-Employer provided catering, but the function was not an official work event. As she was leaving her apartment, plaintiff testified that her knee buckled, but she caught herself before hitting the ground. This was the first time since the April 24, 2008 fall at work that plaintiff's knee had buckled.
11. While at Big Dog's, plaintiff interacted with Jerry Williard, who lived in her apartment complex. Mr. Williard was also a frequent customer at defendant-employer's restaurant and a friend of Mr. Townsend. Plaintiff testified that her knee buckled again within the first hour of her arrival. She fell on her buttocks but was able to pick herself up off the floor. By the end of the evening, plaintiff fell and hit the concrete with her left knee. Her left knee bled from the fall.
12. Plaintiff iced her knee that evening, but the next morning she was unable to place any weight on her left knee. A friend drove her to the emergency room where she reported injuring her left knee a month prior and reinjuring the same knee the day before. Plaintiff was diagnosed with a sprained left knee, placed in a knee immobilizer, advised to ice the knee and use crutches, and was referred for follow-up with Dr. Michael Lauffenburger. *Page 6 
13. On May 30, 2008, plaintiff informed Mr. Townsend of her left knee complaints and of her opinion that they were related to her fall in the dish pit on April 24, 2008.
14. On June 3, 2008, plaintiff presented to Dr. Lauffenburger, an orthopaedic surgeon, for evaluation. Dr. Lauffenburger diagnosed a medial meniscal tear, ordered an MRI of the left knee and wrote plaintiff out of work pending her return appointment.
15. On July 3, 2008, plaintiff presented to Dr. William Satterfield, an orthopaedic surgeon, with complaints of persistent pain and swelling in her left knee. Plaintiff reported a history of falling at work on April 24, 2008. Dr. Satterfield diagnosed plaintiff with a bucket handle medial meniscal tear, an ACL tear and a little arthritis behind her kneecap.
16. On July 7, 2008, plaintiff underwent left knee arthroscopy and medial meniscal repair of a bucket handle tear which were performed by Dr. Satterfield. Surgery confirmed a tear of the anterior cruciate ligament. On August 14, 2008, Dr. Satterfield performed left knee arthroscopy and ACL reconstruction. Following surgery, plaintiff participated in physical therapy.
17. On October 21, 2008, Dr. Satterfield released plaintiff to weight-bearing as tolerated and instructed her to avoid impact activities. On January 29, 2009, Dr. Satterfield released plaintiff to work without restrictions, but instructed her not to perform any running, jumping or pivoting activities.
18. From approximately July 13, 2008 through February 21, 2009, plaintiff received unemployment benefits in the amount of $300.00 per week.
19. Dr. Satterfield indicated that a bucket handle medial meniscal tear was most commonly trauma-related. Dr. Satterfield opined that a scenario wherein plaintiff injured her left knee, continued to work all of her shifts while standing on her feet, carrying trays, and waiting *Page 7 
on customers, and did not seek any medical treatment for nearly a month would not be consistent with plaintiff sustaining a significant injury such as a bucket handle tear and an ACL tear on April 24, 2008. Dr. Satterfield did indicate that it was "possible" that plaintiff fell on April 24, 2008, suffered an initial injury and subsequently aggravated the injury by not seeking any medical care and continuing her work activity.
20. Dr. Lauffenburger opined that the presence of a medial meniscal and an ACL tear in the same knee is the sign of a more severe injury to the knee. In his expert opinion, it would be difficult for a person with both an ACL tear and bucket handle tear "to maintain a job which requires standing and walking with these types of injuries for a full month." He considered it to be unusual for plaintiff's knee not to buckle or bother her for approximately one month and then to begin to cause problems without some other injury or other traumatic episode. Dr. Lauffenburger further opined that
 "with the severity that [plaintiff] was found to have in her surgery of July, it's unusual that a person would be able to work for a full month without a lot of symptoms or any medical care of any kind, even if they were tough and had no insurance — that they wouldn't have to miss some work or something."
Upon further questioning, Dr. Lauffenburger stated it was "possible" that plaintiff sustained an initial injury to the knee on April 24, 2008 and subsequently aggravated it on May 26, 2008 by not seeking any care and continuing her regular physical activity. This is insufficient evidence to establish causation.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW *Page 8 
1. On April 24, 2008, plaintiff sustained an accident at work when she fell on her knee while walking out of the dish pit area of defendant-employer's restaurant.
2. "In a workers' compensation claim the employee has the burden of proving that his claim is compensable." Holley v. ACTS, Inc.,357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). In many instances, the facts in evidence are such that any layman of average intelligence would know what caused a person's injuries; however, the exact nature and cause of some injuries must be established by expert opinion evidence.Click v. Freight Carriers,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). To establish causation, the evidence must rise above the level of mere speculation and conjecture. Holley, 357 N.C. at 232, 581 S.E. 2d at 752. In this case, plaintiff's treating physicians acknowledge the possibility that plaintiff's left knee condition is related to her fall at work on April 24, 2008. Testimony indicating that plaintiff's accident was a "possible" cause of her left knee condition is insufficient to meet plaintiff's burden of proving causation to establish compensability. Thus, plaintiff is not entitled to any benefits under the Act for her left knee condition. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits under the Act is hereby DENIED.
2. Each side shall bear its own costs.
This the 3rd day of June, 2010.
S/___________________ *Page 9 
DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY L. McDONALD COMMISSIONER